# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Danville Division

| | |
|---|---|
| **MICHAEL BLANTON, *et al.*,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No.  4:24cv46** |
| **ROGERS HEATING & COOLING, INC., *et al.*,** | |
| **Defendants.** | |

## MEMORANDUM OF LAW IN SUPPORT OF
## JOINT MOTION FOR SETTLEMENT APPROVAL

Subject to court approval, Plaintiffs Michael Blanton ("Blanton"), Mark Cline ("Cline"), Timothy McFeaters ("McFeaters"), Kayla Clay ("Clay"), and Madeline Reaves ("Reaves") (collectively, "Plaintiffs"), and Defendants Rogers Heating & Cooling, Inc., JAR Investments, LLC, Joseph Allen Rogers and Alyssa Rogers (collectively, "Defendants"), (collectively the "Parties"), have settled this wage and hour action for $150,000.00.  The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") settlement because it is a fair and reasonable resolution of a bona fide dispute and is the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law.

For the reasons set forth below, the parties respectfully request that the Court enter an order approving the settlement detailed in the Settlement Agreement (the "Settlement Agreement").  For the Court's convenience, the Settlement Agreement is attached as Exhibit 1.

## PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS

### I.    Plaintiff's Factual Allegations

McFeaters, Cline and Blanton brought this action against Defendants asserting claims for violations of Fair Labor Standards Act, Virginia Overtime Wage Act, Virginia Wage Payment Act, and Section 40.1-27.3 of the Code of Virginia. On May 2, 2025, Plaintiffs filed a Notice of Consent to Join for Opt-In Plaintiff Madeline G. Reaves, and on May 22, 2025, Plaintiffs filed a Notice of Consent to Join for Opt-In Plaintiff Kayla Clay.

Blanton was employed by Defendants as a Plumber/HVAC Technician and was paid on hourly plus commissions basis. Cline was employed by Defendants as a Plumber and was paid on an hourly plus commissions basis. Both Blanton and Cline were primarily responsible for providing manual labor for Defendants. McFeaters was employed by Defendants as the General Manager of Rogers Heating & Cooling, Inc. Reaves and Clay were employed as customer service representatives.

Plaintiffs alleged that Defendants failed to pay them their proper wages, overtime premiums, and commissions, in various ways. *See* Complaint (ECF No. 1) at ¶ 24.  Defendants also failed to compensate Blanton and Cline for their commute to and from work, beyond the initial 30 minutes each way, which they had accepted as part of their contractual wages.

Both Blanton and Cline alleged that they are owed overtime pay, commissions, pay for their commute as promised, and the full amount of overtime premium at the correct overtime calculation for their overtime hours worked.

Plaintiffs Blanton, Cline, and McFeaters also allege that they complained about the unlawful wage theft to Defendants and that Defendants terminated them in retaliation.

Opt-in Plaintiffs Reaves and Clay, who worked as customer service representatives, were instructed to work so-called "on-call" hours from home every other week, on alternating weeks. They allege that they worked from home after business hours and on weekends, using a company

cell phone and laptop, to answer customer calls. However, they were instructed not to clock-in/out for such "on-call" work hours. Moreover, for more than two and a half years, Defendants paid Clay and Reaves on a "salaried" basis, thereby not requiring them to clock in or out at all while permitting them to work more than 40 hours per week. During this time, Plaintiffs allege that they were "misclassified" as exempt, and therefore entitled to overtime for their overtime hours worked, including not taking lunch breaks and staying late.

## II.    Defendants' Position[1]

Defendants vigorously deny Plaintiffs' allegations in the Complaint.

### A.    Joint Employer

Although Plaintiffs allege a joint employer relationship between Rogers Heating & Cooling, Inc., JAR Investments, LLC, the Defendants maintain that no such relationship exists. If this matter had proceeded with litigation, the evidence would have shown that JAR Investments, LLC has no power to direct, control, or supervise workers employed by Rogers Heating & Cooling, Inc., has no power to hire or fire workers employed by Rogers Heating & Cooling, Inc or modify the terms or conditions of their employment; and has no responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work. As such, Plaintiffs would not have been able to establish a joint employer

---

[1] Plaintiffs do not adopt or endorse, and expressly deny the myriad assertions, aspersions, and representations made in Section II.  Finally, Plaintiffs contend the Counterclaim itself represented a further act of actionable retaliation under the FLSA and its Virginia corollary.

relationship under the test set forth by the Fourth Circuit in *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 141-42 (4th Cir. 2017).

### B.    Relevant Policies

If this matter proceeded with litigation, the evidence would have shown that it is the policy and practice of Rogers Heating and Cooling to accurately compensate all employees in compliance with all applicable state and federal laws. To ensure that non-exempt employees are accurately paid for all hours worked, Rogers Heating & Cooling maintains the following policies:

- "Time Records" Policy, which explicitly instructs employees to accurately record all time worked as well as review their paychecks to report any errors;

- "Work Hours and Meal Periods" Policy, which requires all full-time team working an eight-hour shift to take a 30-minute meal period; and

- "Off-the Clock Work" Policy, which explicitly instructs employees to not "work during a meal break or perform any other extra or overtime work unless you are authorized to do so and that time is recorded on your time card" and provides that "[a]ny team member who fails to report or inaccurately reports any hours worked will result in discipline, up to and including unpaid suspension and/or termination of employment."

In light of these policies and practices, Rogers Heating & Cooling maintains that it complied with all wage and hour laws in good faith.

### C.    Employment of Blanton, Cline, and McFeaters

In November 2023, Rogers Heating & Cooling recruited McFeaters to work for the Company as a General Manager and ultimately, employed him from approximately November 27, 2023 until March 27, 2024. After starting with Rogers Heating & Cooling, McFeaters recommended that the Company hire Cline and Blanton as employees, who McFeaters had

previously worked with and personally vouched for. In December 2023, Rogers Heating & Cooling extended Cline an offer of employment as a Plumber, and ultimately, employed him from approximately January 15, 2024 until March 27, 2024. In January 2024, Rogers Heating & Cooling extended Blanton an offer of employment as a Service Technician, and ultimately, employed him from approximately February 12, 2024 until March 27, 2024.

### 1.    Unpaid Overtime, Compensable Travel and Meal Breaks

Although Cline and Blanton allege that they were not paid for all hours worked, compensable commuting time, and compensable meal breaks, Defendants maintain that this is not accurate and not supported by contemporaneous documentation. As outlined in the proposed Counterclaim filed by Rogers Heating and Cooling, in preparation for defending itself against this lawsuit, the Company conducted an internal audit in which it reviewed the paper timesheets and electronic clock-ins submitted by Blanton and Cline during their employment and against the GPS data for their vehicles, which was maintained and kept through Verizon Connect. After reviewing the data, the Company determined that Blanton and Cline did not accurately record their time for a single week of their employment with the Company.

For example, a review of Cline's  timesheet for the week of January 22, 2024 reveal that none of times recorded on his timesheet were consistent with his vehicle data when taking into account his arrival times at worksites in the morning and subtracting 45 minutes for his compensable commute and taking into account his departure times from worksite at this end of day departure times and adding 45 minutes for his compensable commute:

| Date | Clock-In Time Reported by Cline | Arrival Time (Verizon Data) | Calculated Clock-In Time based on Verizon Data | Clock-Out Time Reported by Cline | Departure Time (Verizon Data) | Calculated Clock-Out Time based on Verizon Data |
|---|---|---|---|---|---|---|
| 01-22-24 | 6:00 AM | 6:41 AM | 5:56 AM | 6:15 PM | 5:20 PM | 6:05 PM |
| 01-23-24 | 6:30 AM | 7:35 AM | 6:50 AM | 7:00 PM | 6:00 PM | 6:45 PM |

| 01-24-24 | 6:00 AM | 6:38 AM | 5:53 AM | | 11:00 PM | 8:50 PM | 9:35 PM |
| 01-25-24 | 8:00 AM | 8:54 AM | 8:09 AM | | 4:40 PM | 3:28 PM | 4:13 PM |
| 01-26-24 | 7:00 AM | 8:06 AM | 7:21 AM | | 6:30 PM | 5:29 PM | 6:14 PM |

If this matter had proceeded with litigation, the contemporaneous records from Verizon Connect and the internal audit would have shown that this was not a lone or isolated incident but rather a consistent issue throughout the Company's employment of Blanton and Cline. For example, during the week of March 4, 2024:

| Date | Clock-In Time Reported by Cline | Arrival Time (Verizon Data) | Calculated Clock-In Time based on Verizon Data | Clock-Out Time Reported by Cline | Departure Time (Verizon Data) | Calculated Clock-Out Time based on Verizon Data |
|---|---|---|---|---|---|---|
| 03-04-24 | 6:30 AM | 7:28 AM | 6:43 AM | 8:30 PM | 7:22 PM | 8:07 PM |
| 03-05-24 | 6:30 AM | 7:40 AM | 6:55 AM | 6:30 PM | 5:00 PM | 5:45 PM |
| 03-06-24 | 6:30 AM | 7:16 AM | 6:31 AM | 6:30 PM | 5:23 PM | 6:08 PM |
| 03-07-24 | 6:15 AM | 7:32 AM | 6:47 AM | 6:00 PM | 4:51 PM | 5:36 PM |
| 03-08-24 | 6:30 AM | 7:18 AM | 6:33 AM | 7:00 PM | 5:32 PM | 6:52 PM |

If this matter had proceeded with litigation, contemporaneous vehicle data would have also shown that Blanton and Cline also took breaks which exceed 20 minutes (i.e., the FLSA's threshold for compensable breaks). In light of the timekeeping discrepancies, the Defendants maintain that Blanton and Cline were regularly overcompensated. To the extent that Blanton and Cline are owed wages for any weeks that they were not overcompensated, Defendants maintain that such amounts would have been nominal.

## 2.    Unpaid Incentive Compensation and Commissions

Although Cline and Blanton allege that they were not compensated for all incentive compensation and commissions earned, Defendants maintain that this is not accurate and not supported by contemporaneous documentation. If this matter had proceeded with litigation, contemporaneous documentation and communications would have shown that during the relevant time period, Rogers Heating & Cooling maintained written compensation plans, which required

that eligible employees be employed with the Company for at least 30 days and be the employee responsible for selling the work to qualify for the compensation payment. Although Plaintiffs dispute these facts, emails sent from McFeaters in February 2024 corroborate the requirements of the Company's compensation plans. The contemporaneous communication includes an email sent on February 2, 2024 from McFeaters to Blanton stating, "The one thing we did not talk about is after you finish on boarding and are on call, usually 4-5 weeks you will gain access to the price book and being selling your own units under our processes as well", and an email sent on February 19, 2023 from McFeaters to Joey and Alyssa Rogers memorizing his conversation with Cline in which McFeaters said, "Yes, I spoke with Mark, seem to be fine. He did $27,000 in January and was expecting an approx. 10% bonus which he did not see. We talked about how he only worked for a few weeks and a lot of those jobs were Brandon sold commissions not his which affected it." In light of the contemporaneous documentation, Defendants believe that the evidence would have ultimately shown that Blanton and Cline were not entitled to any additional bonuses or commissions.

### 3.    Retaliation

At all relevant times during their employment, Blanton, Cline, and McFeaters were at-will employees, and as such, Rogers Heating & Cooling could terminate their employment at any time for any reason with or without notice. Although Blanton, Cline, and McFeaters allege that the Company terminated their employment in retaliation for raising complaints regarding wage and hour violations, Rogers Heating & Cooling maintains that it terminated their employment for cause. If this matter have proceeded to litigation, contemporaneous documentation would have shown that during the relevant time period Rogers Heating & Cooling maintained policies requiring all employees to accurately record their time and that during their employment and that

the Company identified a number of instances in which the time recorded by Blanton and Cline on their respective timesheets was not supported by the vehicle data for their work vehicles, which was tracked and maintained by Verizon Connect.

With regard to McFeaters, if this matter have proceeded to litigation, contemporaneous documentation and communications would have shown that McFeaters, as the General Manager of Rogers Heating & Cooling, owed the Company a fiduciary duty, including care and loyalty, that the Company expected him to routinely review timekeeping records as well as data from Verizon Connect, and that McFeaters either did not identify or address the timekeeping issues with Blanton and Cline. Contemporaneous financial records would have also shown a substantial decline during the period that McFeaters was the General Manager, which contributed to the Company's decision to terminate his employment.

It would have also shown that early into his employment with the Company, McFeaters began sending weekly emails to Joey and Alyssa Rogers providing them with updates from the workweek as well as documenting specific items that they had discussed or were otherwise aware of, that McFeaters sent an email for each week of his employment, that not once, as reflected by the emails, did McFeaters raise any issues about compensating employees in accordance with federal and state law, and that not once, as reflected by the emails, did McFeaters indicate that such a discussion had occurred between him, Joey and Alyssa Rogers. In light of the contemporaneous documentation, Defendants believe that the evidence would have ultimately shown that Blanton, Cline, and McFeaters were not terminated in retaliation for reporting wage and hour violations.

### D.    Employment of Clay and Reaves

On or about April 7, 2021, Clay began her employment with Rogers Heating & Cooling as a Customer Service Representative and continued in this role until her resignation on or about May 11, 2022. Approximately one month later, on or about June 27, 2022, Clay returned to the Company as a Customer Service Representative and stayed in this role until promotion her to Dispatcher on or about June 23, 2023. Reaves began her employment with Rogers Heating & Cooling, Inc. as a Customer Service Representative on or about October 10, 2022 and was ultimately promoted to Lead Customer Service Representative. In March 2025, Reaves voluntarily resigned from the Company.

Although Clay and Reaves allege that they were not compensated for all time spent on-call, Defendants maintain that this is not accurate and not supported by contemporaneous documentation. If this matter had proceeded with litigation, contemporaneous documentation, including phone records, would have shown that the number of weeks spent on-call was fairly limited during the year, that Clay and Reaves received very few, if any, calls during the short three hour on-call periods, and that the calls they did receive were relatively short. If this matter had processed with litigation, Defendants would have deposed Clay and Reaves as well as requested their cell records, internet histories, streaming records, bank account records, and credit card records.

### III.    Overview of Investigation, Litigation, and Settlement Negotiations

The instant lawsuit was filed on June 13, 2024. ECF 1. Prior to filing, Plaintiffs' counsel conducted a thorough investigation into the merits of the potential claims and defenses. Plaintiffs' counsel focused their investigation and legal research on the underlying merits of the claim and

the damages to which the Plaintiffs may be entitled. Defendants also conducted significant investigations into the claims by Plaintiffs. Defendants provided Plaintiffs with substantial records relating to time, pay, commuting records, and commissions/sales data.

On July 22, 2025, the Parties engaged in a video settlement conference presided over by U.S. Magistrate Judge C. Kailani Memmer. While that date concluded without a settlement, an agreement to settle the case was shortly thereafter reached, and the terms are set forth below for the Court's review and approval as required by the FLSA.

## SUMMARY OF THE KEY SETTLEMENT TERMS

**The Settlement Amount(s) and Allocation Between Plaintiffs**

Defendants have agreed to pay a total of $150,000.00 to settle the claims in this action, with staggered payments of: (1) $90,000 payable to the five Plaintiffs within 5 business days following this Court's approval; and (2) $60,000 payable to Plaintiffs' counsel on or before January 7, 2026. The Plaintiffs' recovery of $90,000 (the first installment of the $150,000 total settlement) is allocated as follows:

| Plaintiff | WAGE CLAIM ALLOCATION (W-2) | NON-WAGE CLAIM ALLOCATION (Including $5k For General Release) (1099) | CLAIM SETTLEMENT AMOUNT |
|---|---|---|---|
| Blanton, Michael | $6,000.00 | $11,000.00 | $17,000.00 |
| Cline, Mark | $6,000.00 | $11,000.00 | $17,000.00 |
| McFeaters, Tim | $4,500.00 | $9,500.00 | $14,000.00 |
| Reaves, Maddie | $8,000.00 | $13,000.00 | $21,000.00 |
| Clay, Kayla | $8,000.00 | $13,000.00 | $21,000.00 |
| **Totals** | **$32,500.00** | **$57,500.00** | **$90,000.00** |

**FLSA Release and allocation for a General Release**

As noted above and reflected in the attached Settlement Agreements, the Parties agreed to a mutual general release of claims. Specifically, each Plaintiff will receive $5,000 in exchange for

their release of claims against Defendants. The parties recognize that the general rule for FLSA settlements within this district is that the release is properly tailored to only release the FLSA claims at issue. As the District Court explained in *Nazareth v. Shree Jay Jalaram, LLC*, if a "release provision settles claims beyond the wage and hour issues asserted in the complaint, '[i]t is incumbent upon the parties to show whether Plaintiff has been 'independently compensated for the broad release of claims unrelated to any dispute regarding FLSA coverage or wages due,' such that the settlement is reasonable.'" Civil Action No. 5:24-cv-70390, 2025 LX 50345, at *19 (W.D. Va. May 7, 2025).

Courts within the Fourth Circuit routinely approve settlement agreements that include a general release of all claims against defendants. *See Augu Menendez v. William III Inc.*, Civil Action No. 8:24-261-AAQ, 2024 LX 79800, at *12 (D. Md. Dec. 17, 2024); *Gue v. Shree Pashuapati Corp.*, No. DKC-21-44, (D. Md. June 14, 2021); *Lee v. Ex-Exec Lube, LLC*, No. DLB-19-3195, (D. Md. Mar. 24, 2021); *Nyamira v. Little Kampala Servs., LLC*, Civil Action No. DKC 17-3379, at *9 (D. Md. Oct. 17, 2018); *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 410 (D. Md. 2014); *Villarroel v. Sri Siva Vishnu Temple*, No. GJH-14-02617, at *6-7 (D. Md. Dec. 31, 2014); *Saman v. LBDP, Inc.*, Civil Action No. DKC 12-1083,, at *14-16 (D. Md. June 13, 2013);

Although courts require that there be independent consideration for a general release, the monetary amount does not need to be substantial as courts regularly approve settlement agreements where the consideration provided is nominal. *See Nyamira v. Little Kampala Servs., LLC*, Civil Action No. DKC 17-3379,, at *10 (D. Md. Oct. 17, 2018) ("Because the $1,500 provided to Plaintiff Ominde in the Agreement appears to be a fair and reasonable resolution of Plaintiff Ominde's claims, the amount also reflects fair compensation for the release and non-disparagement provisions executed."); *Tall v. MV Transp.*, Civil Action No. DKC 13-2306,, at *14

(D. Md. Jan. 22, 2015) ("Based on the foregoing, the $2,200 appears reasonable for the general release executed."). In fact, courts have routinely found $100 to be sufficient independent consideration for a full release of claims. *See Parks v. Am. Catastrophe Sols., LLC*, No. 5:23-cv-361-JA-PRL, 2024 LX 39997, at *4-5 (M.D. Fla. Sep. 5, 2024); *Roman v. FSC Clearwater, LLC*, No. 6:16-cv-969-Orl-41DCI,, at *6-7 (M.D. Fla. Apr. 21, 2017); *Weldon v. Backwoods Steakhouse, Inc.*, No. 6:14-cv-79-Orl-37TBS, 2014 U.S. Dist. LEXIS 123286, 2014 WL 4385593, at *1 (M.D. Fla. Sept. 4, 2014)

Courts have also found there to be sufficient consideration when the release of claims is mutual and where the defendant has asserted counterclaims against the plaintiffs. *See Nazareth v. Shree Jay Jalaram, LLC*, Civil Action No. 5:24-cv-70390, 2025 LX 50345, at *20 (W.D. Va. May 7, 2025) ("At the hearing, Nazareth's counsel explained that other terms of the Settlement Agreement provided additional consideration for the general release. For example, the general release is mutual: it releases Nazareth's claims against Defendants, and it releases Defendant' claims against Nazareth. The Settlement Agreement also contains a mutual non-disparagement clause and neutral job-reference letter for Nazareth's benefit, Br. in Supp., Ex. A, at 10, which Nazareth found valuable."); *Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 LX 14111, at *3-4, *18-19 (M.D. Fla. Mar. 14, 2012) ("Subsequently, MHRC moved, and was granted, leave to amend its answer to assert a counterclaim against Plaintiff Tomeka Bright. MHRC claimed that Bright had falsified certain travel vouchers during her time as a family service counselor, thereby fraudulently obtaining in excess of $15,000 in reimbursements from MHRC. MHRC alleged that when it learned of Bright's wrongful conduct, it terminated her employment. MHRC sought to recover the reimbursements paid to Bright. […] As to the settlement agreement between Plaintiff Tomeka Bright and MHRC, the Court finds it is a fair and reasonable resolution

to their claims and counterclaims. Unlike the other Plaintiffs, the dispute between Bright and MHRC goes beyond the FLSA claims.MHRC has asserted numerous counterclaims against Bright, and a settlement must necessarily address all of the parties claims. MHRC's willingness to forego its claims against Bright provides the additional justification needed to support the inclusion of a general release in that settlement agreement.").

In this case, in addition to the FLSA claims, Blanton, Cline, and McFeaters alleged numerous claims under Virginia state law, including violations of the Virginia Wage Payment Act (Va. Code § 40.1-29), Virginia Overtime Wage Act (Va. Code § 40.1-29.3), and Virginia's retaliatory action statute, which is colloquially referred to as the Virginia Whistleblower Protection Law (Va Code § 40.1-27.3).

As set forth above and outlined in the proposed Counterclaim filed by Rogers Heating & Cooling, the Company conducted an audit following the filing of the present lawsuit and identified alleged irregularities in the timekeeping of Blanton and Cline. In light of the alleged timekeeping irregularities, Rogers Heating & Cooling intended to pursue common law claims for intentional misrepresentation (Count I of Counterclaim) and negligent misrepresentation (Count II of Counterclaim) against Blanton and Cline. In addition, as set forth above and outlined in the proposed Counterclaim filed by Rogers Heating & Cooling, Blanton purchased an HVAC unit and equipment from Rogers Heating & Cooling in March 2024 for $3,381.95 but following his termination, he ceased making payments and owed the Company $2,781.95. As a result, Rogers Heating & Cooling intended to pursue a common law breach of contract claim (Count III of Counterclaim) against Blanton and Cline. In the proposed Counterclaim, Rogers Heating & Cooling also reserved the right to further amend the Counterclaim to bring additional claims against Plaintiffs that may be revealed during the course of discovery, which may have included

claims against McFeaters arising out of his fiduciary duties to Rogers Heating & Cooling. *See* Countercl. ¶¶26, 47-49. In addition, during litigation, Rogers Heating & Cooling identified a number of online posts that it believed were defamatory and it believes were made by Plaintiffs. As a part of the settlement, at least one of the online posts was removed, but Plaintiffs did not identify which, if any, Plaintiff was responsible for the post.

To buy peace and certainty, additional consideration has been allocated for a general release of claims to include mutual non-disparagement, and a mutual release of all claims by all parties. Specifically, the parties agree that the settlement allocated to each plaintiff includes consideration for each Plaintiffs': (1) wage claim; and (2) and non-wage claims which includes an allocation of $5,000 for the general release.

**Denial of Liability**

The settlement acknowledges that the Defendant denies liability in any way to the Plaintiffs and the settlement of this matter should in no way be construed as an admission of liability.

## ARGUMENT

### I.    The Settlement Meets the Requirement for Approval of an FLSA Settlement.

Settlement of an FLSA lawsuit must be approved by the U.S. Department of Labor or a federal district court. *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citing *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005)). Courts in the Western and Eastern District of Virginia have traditionally taken their direction from the Eleventh Circuit and have held that an FLSA settlement should be approved if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (citing *Lynn Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Furthermore, when the parties' settlement, as here, reflects "a reasonable compromise

over the issues the court may approve it in order to promote the policy of encouraging settlement of litigation." *Kuntze v. Josh Enters., Inc.*, No. 2:18cv38, 2019 WL 2179220, at *1 (E.D. Va. May 20, 2019) (internal markings omitted) (citing *Lynn Food Stores*, 679 F.2d at 1354).

This settlement represents a good faith compromise of the parties' bona fide dispute of liability and damages under the FLSA. Furthermore, the proposed settlement terms are fair and reasonable, and the settlement was reached after arms-length negotiation. For these reasons and based on the foregoing, the parties request that the Court approve the Settlement Agreement.

A.    **There is a Bona Fide Dispute over FLSA Provisions.**

To merit Court approval, the settlement must revolve a bona fide dispute over FLSA provisions. *See Patel*, 15 F. Supp. 3d at 654 (citing *Lynn Food Stores*, 679 F.2d at 1355). In this action, Plaintiffs allege that they were not paid regular and overtime wages in violation of the FLSA. As the Court has noted, "[a] bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1.08cv1310, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009). Furthermore, Defendants have consistently denied and continue to deny those allegations. The Settlement Agreement contains a provision expressly denying any and all liability to Plaintiffs. As such, this settlement represents a good faith compromise of the parties' bona fide dispute regarding the FLSA claims alleged in the Complaint.

B.    **The Settlement is Fair and Reasonable.**

"In determining whether a settlement is fair, adequate, and reasonable there is a *strong presumption* in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed." *LaFleur*, 189 F. Supp. 3d at 593 (emphasis added) (internal markings and citations omitted). Those factors to be considered when assessing whether an

agreement is fair and reasonable are: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of the counsel who have represented the Plaintiffs; (5) the probability of Plaintiffs' success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *Id.*; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975). As detailed below, all factors point toward approval in this case.

### 1.    The Extent of Discovery that has Taken Place.

Prior to mediation with U.S. Magistrate Judge Memmer on July 22, 2025, Rogers Heating and Cooling produced hundreds of documents related to the employment of the Plaintiffs, including timesheets, time card reports, paystubs, payroll detail registers, W-2s, offer letters, job descriptions, compensation plans, employee policies, vehicle data for the work vehicles of Blanton and Cline, jobs reports for Blanton and Cline, and emails sent by McFeaters. . Plaintiffs' counsel was able to use the produced time and pay data and Plaintiffs' own estimates of time worked to construct a damages model which allowed the Plaintiffs to communicate their estimate of Defendants' maximum exposure. As a result, the parties had all the information that they needed to evaluate the damages at issue and to determine whether settlement made legal and/or business sense. Additional discovery certainly could have been sought, e.g., deposition testimony, but it likely would not have changed the damages calculation and would only have caused the parties to

incur more fees and expenses.  The extent of this informal and formal discovery thus weighs in favor of approval.

### 2.    The Stage of the Proceedings.

Because this lawsuit involves allegations of unpaid regular and overtime wages under the FLSA, there are several important issues that would have required significant litigation had the matter not settled.  Such issues include proof and defenses with respect to Plaintiffs' claimed off-the-clock work, Defendants' good faith defense(s), and the timeliness of certain owed overtime payments by Defendants after the initiation of litigation.  None of this is to mention the time and energy that would have gone into dispositive briefing.

This settlement provides meaningful recoveries to the Plaintiffs and avoids any risk of adverse factual findings. From Defendants' perspective settlement eliminates further exposure to fees and prevents the potential for an opt in collective action insofar as settlement was reached prior to Plaintiffs' Motion for Class Certification, and Plaintiffs' counsel has confirmed that they do not represent any other of Defendants' employees in FLSA claims.

### 3.    The Absence of Fraud or Collusion.

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."  *Lomascolo*, 2009 WL 3094955, at *12; *see also Kuntze*, 2019 WL 2179220, at *2.  The parties negotiated this settlement at arms-length and settlement was not reached until Rogers Heating & Cooling produced all data necessary for their calculation of damages.  Thus, there is no evidence to outweigh the presumption that no collusion occurred between counsel.

### 4.    The Experience of Plaintiffs' Counsel.

When counsel has "experience in federal court and employment litigation . . . their opinion

is entitled to weight." *Gagliastre v. Captain George's Seafood Rest., LP*, No. 2:17cv379, 2019

WL 2288441, at *3 (E.D. Va. May 29, 2019); *see also Flinn*, 528 F.2d at 1173 ("While the opinion

and recommendation of experienced counsel is not to be blindly followed by the trial court, such

opinion should be given weight in evaluating the proposed settlement."). Plaintiffs' counsel are

experienced in the fields of employment litigation and wage and hour law. They have litigated a

number of small and large overtime cases against public entities and private corporations,

including, but not limited to:

> *Rogers, et al. v. City of Richmond*, 3:11CV620 (E.D. Va.)
> *Carroll, et al. v. County of Henrico*, 3:12CV00105 (E.D. Va.)
> *Devine, et al. v. City of Hampton*, 4:14CV81 (E.D. Va.)
> *Wright, et al. v. City of Roanoke*, 7:18CV210 (W.D. Va.)
> *Lacroix, et al., v. City of Portsmouth, Virginia*, 2:13CV533 (E.D. Va.)
> *Slavin, et al., v. United States Postal Servic*e, 3:17CV00134 (E.D. Va.)
> *Milton, et al. v. Quality Eco Technologies, LLC*, 3:20CV43 (E.D. Va.)
> *Yerby, et al. v. City of Richmond*, 3:19CV393 (E.D. Va.)
> *Clinton, et al. v. GEICO*, 2:16CV430 (E.D. Va.)
> *Mendoza, et al. v. Baird Drywall & Acoustic, Inc. et al.*, 7:19-cv-882 (W.D. Va.)
> *Broussard v. Eldor Automotive Powertrain USA* 7:19-cv-0841 (W.D. Va.)
> *Pinon v. Kalyan Plaza, LLC et al.* 7:20-cv-205 (W.D. Va.)
> *Sziber v. Dominion Energy, Inc.* 3:20-cv-117 (E.D. Va.)
> *Jones v. Harvest Roanoke LLC et al.* 7:22-cv-485 (W.D. Va.)
> *Pinon, et al. v. Kalyan Hospitality, LLC, et al.*, 7:20-cv-205 (WDVA)
> *Campbell, et al. v. Intercontinental Capital Group, Inc*., 3:22-cv-00034 (EDVA)
> *Granderson, et al. v. Capital One Financial Corporation*, 3:21-800 (EDVA)
> *Denson, et al. v Elephant Insurance Services, LLC,* 3:22-cv-00022 (EDVA)
> *Wheaton v. Westminster-Canterbury of The Blue Ridge*, 3:22-cv-00050 (WDVA)

Plaintiffs' counsel relied on the time and pay data provided by Defendant and Plaintiffs'

estimates to evaluate, negotiate and make well-informed judgments about the adequacy of the

settlement. Based on Plaintiffs' counsel's knowledge of the case and applicable law, as well as

their experience in numerous similar wage and hour actions, Plaintiffs' counsel's opinion is that

the settlement is fair, reasonable, and adequate and resolves a bona fide dispute. That opinion,

based on extensive knowledge of employment law, is entitled to significant weight.

### 5.     The Probability of Plaintiffs' Success on the Merits.

While the parties each certainly disagreed over the ratio of probability of Plaintiffs'
success, the Plaintiffs recognize that there is value to certainty and money-in-hand now, rather
than rolling the dice at trial. Defendants likewise recognize that regardless of whether they
ultimately prevail on the merits they will incur substantial costs from defending against Plaintiffs'
claims, including engaging in formal discovery, opposing a motion for conditional certification by
Plaintiffs, briefing a motion for summary judgment, briefing a motion for decertification, and
ultimately, a trial for any claims not resolved through the motion for summary judgment. In
addition, Rogers Heating & Cooling would have incurred significant litigation costs associated
with pursuing a counterclaim against Blanton and Cline as set forth in the proposed Counterclaim
(ECF No. 19-1) and any other grounds for additional counterclaims that may have been discovered
through formal discovery against Plaintiffs. .

With regard to the probability of success on the merits, when evidence presented indicates
that a Plaintiff has "significant hurdles to overcome to affect any recovery under the FLSA," this
factor "weighs heavily in favor of finding the settlement fair." *Patel*, 15 F. Supp. 3d at 656.  As
stated above, recovery in this matter is not guaranteed.  Plaintiffs faced standard disputes regarding
liability, liquidated damages, willfulness, and the quantum of any alleged "off-the-clock" work.
Defendants take the position that Plaintiffs would have faced significant hurdles to recovery had
this matter proceeded with litigation. As reflected by the internal audit conducted by Rogers
Heating & Cooling, which compared the vehicle data for the work vehicle(s) of Blanton and Cline
against the timesheets they submitted during their employment and calculated what their clock-in
and clock-out times should have been for the relevant time period based on the vehicle data, the
hours recorded by Blanton and Cline during their employment was inconsistent with the actual

hours spent working and commuting.. Because Plaintiffs faced significant hurdles with respect to their FLSA claims, the probability of success on the merits factor weighs in favor of approval.

6.    **The Amount of the Settlement in Relation to the Potential Recovery.**

The potential recovery was hotly contested. Based on the data provided by Defendants, and Plaintiffs estimate of hours of unaccounted overtime worked, a "home run" recovery for Plaintiffs would be recovering 10 overtime hours per week, which would have resulted in $216,781.48  in overtime damages (inclusive of liquidated damages). With regard to Plaintiffs Clay and Reaves, by Rogers Heating & Cooling's calculations, Defendants contend that Plaintiffs would not have been entitled to any recovery as they were merely waiting to be engaged and were free to engage in personal activities during the periods that they were on-call for, which was a limited number of times. With regard to Blanton and Cline, by Rogers Heating & Cooling's calculations, Plaintiffs were regularly overcompensated during their employment due to their failure to accurately record their time. Had this matter proceeded to litigation and the Court granted Rogers Heating & Cooling's Motion for Leave to File a Counterclaim, Rogers Heating & Cooling takes the position that it would have been entitled to recover overpayments against Plaintiffs arising out of their failure to accurately record their working hours and such recovery would have exceeded any recovery that Blanton and Cline would have been entitled to.  .

As stated, total settlement is $150,000. After attorneys' fees, this settlement compensates the Plaintiffs in the amount of $90,000, or approximately 41.67% of their alleged "home run" damages, inclusive of liquidated damages. The Plaintiffs enjoy the benefit of settlement far sooner than if this matter were to go to trial. Additionally, Plaintiff also avoids any of the negative outcomes that she may have faced through litigation, *i.e.*, loss on summary judgment, loss at trial, or loss on appeal.  Consequently, this settlement brings considerable value and certainty now, as

opposed to months or years from now.  The substantial benefit to the Plaintiff is a significant factor weighing in favor of approval of the proposed Settlement Agreement.

### C.    Plaintiffs' Attorneys' Fees and Costs.

The FLSA provides in part that "the court shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action."  29 U.S.C. § 216(b).  Plaintiffs and their Attorneys agreed upon a 40% contingency fee, after reimbursement of costs advance. In this case the Defendants requested to pay the $150,000 settlement in staggered amounts, which the Plaintiffs agreed, with $90,000 payable to the Plaintiffs following Court approval, and the $60,000 attorneys' fees payable on or before January 7, 2026.

The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a Settlement Agreement."  *See Poulin v. General Dynamics Shared Res.*, *Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)); *see also Davis v. BT Ams. Inc.*, No. 2:16cv206, 2017 WL 11506967, at *2-3 (E.D. Va. May 10, 2017).  When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992); *LeFluer*, 189 F. Supp. 3d at 593. However, assessing the fairness of attorneys' fees that are part of a negotiated FLSA settlement is not identical to the traditional lodestar analysis.  *Devine v. City of Hampton*, No. 4:14cv81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015).  In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and

use lodestar principals as a cross-check to assess fairness.  *Id*. (citing *Poulin*, 2010 1813497, at *1).

In order for the Court to apply a lodestar cross check on the reasonableness of the contractual attorneys' fees of 40%, to date, Plaintiff's attorneys have expended over 102. hours on this matter to date plus advancing costs of $754.69, for a lodestar in excess of $59,000.00. Plaintiffs' counsel has agreed to absorb the risk of non-payment by agreeing to defer payment until after the new year with the Plaintiffs receiving their funds first.  Plaintiffs' counsel will also continue to expend time in bringing this case to a conclusion, including attending any court hearings, conferring with clients, and monitoring compliance with the settlement and staggered settlement payments set forth in the agreement.  Finally,, "[i]n the Fourth Circuit, 'the most critical factor in calculating a reasonable fee award is the degree of success obtained.'" *Teague v. Bakker*, 213 F. Supp. 2d 571, 583 (W.D. N.C. 2002) (quoting *McKnight v. Cir. City Stores, Inc.*, 14 F. App'x 147, 149 (4th Cir. 2001)).  Plaintiffs submit that the settlement amounts represent a huge success in their own right, made more so given the obviously extensive  defense (and offense) that Defendants intended to pursue.

## CONCLUSION

This Settlement was reached after continued settlement negotiations.  The Parties engaged in analysis of the facts and the data at issue and the Settlement Agreement provides the Plaintiffs significant monetary relief.  Because the settlement is a fair and reasonable resolution of a bona fide dispute between the Parties, it should be approved.

A Proposed Order is attached hereto as **Exhibit 2**.

The Parties request that the Court approve this settlement , and if the Court would like a hearing, the Parties respectfully request a video-conference hearing.

Respectfully submitted,


By:   */s/ Craig Juraj Curwood*
      Craig Juraj Curwood (VSB No. 43975)
      Zev H. Antell (VSB No. 74634)
      Samantha R. Galina (VSB No. 96981)
      Butler Curwood, P.C.
      140 Virginia Street, Suite 302
      Richmond, VA 23219
      Telephone: (804) 648-4848
      Email: craig@butlercurwood.com
          zev@butlercurwood.com
          samantha@butlercurwood.com

      *Counsel for Plaintiffs*


  */s/ Milena Radovic*
      Milena Radovic (VSB No. 91000)
      Jackson Lewis P.C.
      500 E Main Street, Suite 800
      Norfolk, VA 23510
      Telephone: (757) 648-1445
      Fax: (757) 648-1418
      Email: milena.radovic@jacksonlewis.com

      *Counsel for Defendant*


## Certificate of Service

I hereby certify that on September 23, 2025 I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will provide a Notification of Filing (NEF)

to all counsel of record.


By:   */s/ Craig Juraj Curwood*
      Craig Juraj Curwood (VSB No. 43975)
      Zev H. Antell (VSB No. 74634)
      Samantha R. Galina (VSB No. 96981)

Butler Curwood, P.C.
140 Virginia Street, Suite 302
Richmond, VA 23219
Telephone: (804) 648-4848
Email: craig@butlercurwood.com
          zev@butlercurwood.com
          samantha@butlercurwood.com

*Attorneys for Plaintiffs*